Jingxin Li, Esq. (SBN 326105)
**Law Office of Jason Li, P.C.**
820 S Garfield Ave, Ste 102,
Alhambra, CA 91801-5838
Telephone: (626) 537-1403
Fax: (626) 414-5627
Email: jasonli@jasonlilaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert B Shields, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> Dollar Tree, Inc. <br><br> Defendant. | Case No. **'23 CV 0925 JLS BLM** <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. VIOLATIONS OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT (Cal. Civ. Code § 1750, *et seq.*); <br><br> 2. VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*); <br><br> 3. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500, *et seq.*); <br><br> 4. BREACH OF WARRANTY; <br><br> 5. UNJUST ENRICHMENT. <br><br> **DEMAND FOR JURY TRIAL** |

- 1 -

CLASS ACTION COMPLAINT
CASE NO.:

Plaintiff, Robert B Shields ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, and hereby bring Plaintiff's Class Action Complaint against Dollar Tree, Inc., the manufactures/companies which manufacture, distribute, market and advertise mentioned products, any other entity owned, related, or operated by the above corporate entities ("Defendant"), alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following: Defendant breaks that promise and repeatedly violates federal and state law by selling glucosamine Sulfate supplements with mislabeled ingredients, identifying their contents as glucosamine sulfate, when in fact the supplements don't contain any Glucosamine Sulfate. The independent chemists would like to invite Defendants' chemists to use several United States Pharmacopoeia ("USP") test methods, to **perform the test together, to testify the knowing frauds**.

## I.   INTRODUCTION

1. This case challenges Defendant's practice of selling counterfeit glucosamine sulfate supplements. Simply stated, these products are marketed as glucosamine sulfate when, as a matter of fact, no glucosamine sulfate is found in the products.

2. Plaintiff brings this class action on behalf of himself and all purchasers in California of any Defendant products that represent on their labeling that they contain Glucosamine Sulfate ("Glucosamine Sulfate Products"), for breach of express warranty, unjust enrichment, violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; violations of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq. regarding its unfair, unlawful, unethical

CLASS ACTION COMPLAINT
CASE NO.:

fraudulent, misleading, unconscionable, and/or deceptive sales and/or marketing of its Glucosamine Sulfate containing Supplements ("California Class").

3. As against Defendant, Plaintiff also brings this class action on behalf of himself and the Nationwide Class of all purchasers of any Defendant products that represent on their labeling that they contain Glucosamine Sulfate, for violations of the UCL, CLRA, and FAL, and for breach of warranty and unjust enrichment ("Nationwide Class").

4. Plaintiff demands a combination of damages and injunctive relief.

5. Market experts estimate the size of the global dietary supplements market in 2019 to be $123.28 billion, expanding at 8.2% compound annual growth rate. In 2019, North America accounted for 38% of the total market share in terms of revenue. Glucosamine is one of the most commonly purchased dietary supplements, which some researchers believe will grow to a market of more than $750 million by 2022.

6. Glucosamine is one of the most common dietary supplements available. It is a natural substance that is found in the cartilage in joints. Consumers generally take glucosamine supplements in order to help treat the symptoms of joint pain, osteoarthritis, and rheumatoid arthritis, or to preserve joint health.

7. General speaking, there are two commercially available forms of glucosamine: glucosamine sulfate ("Glucosamine Sulfate") and glucosamine hydrochloride ("Glucosamine Hydrochloride").

8. Glucosamine Sulfate is clinically preferred and is believed to be more effective, and, accordingly, consumers typically choose Glucosamine Sulfate. It therefore sells for more than other glucosamine products.

CLASS ACTION COMPLAINT
CASE NO.:

9. The National Institutes of Health advises that there are "several kinds of glucosamine products. The most research showing benefit is for products that contain glucosamine sulfate. Products that contain glucosamine hydrochloride do not seem to work as well."[1] Indeed, the National Institutes of Health further advises that "[g]lucosamine hydrochloride is used for osteoarthritis, rheumatoid arthritis, glaucoma, a jaw disorder called temporomandibular disorder (TMD), joint pain, and many other conditions, ***but there is no good scientific evidence to support these uses***… Some researchers believe that glucosamine hydrochloride might not work as well as glucosamine sulfate. They think the ***'sulfate' part of glucosamine sulfate is the important factor*** because sulfate is needed by the body to produce cartilage."[2]

10. Similarly, the Mayo Clinic notes: "[t]here are several forms of glucosamine, including glucosamine sulfate, glucosamine hydrochloride and N-acetyl glucosamine. These supplements are not considered interchangeable."[3]

11. It is widely accepted that while Glucosamine Sulfate and Glucosamine Hydrochloride "have some similarities . . . they may not have the same effects when taken as a dietary supplement. Most of the scientific research on glucosamine has involved glucosamine sulfate."[4]

12. Private companies have picked up this message and promote Glucosamine Sulfate over Glucosamine Hydrochloride. See, e.g., "Glucosamine Sulfate vs. Glucosamine Hydrochloride—What You Need To Know," Flexcin, https://flexcin.com/glucosamine-sulfate-vs-glucosamine-hydrochloride-what-you-need-to-know/ ("As a result, many times

---

[1] See https://medlineplus.gov/druginfo/natural/807.html as accessed February 27, 2023.
[2] See https://medlineplus.gov/druginfo/natural/747.html as accessed February 27, 2023.
[3] See https://www.mayoclinic.org/drugs-supplements-glucosamine/art-20362874 as accessed February 27, 2023.
[4] See https://www.webmd.com/vitamins/ai/ingredientmono-807/glucosamine-sulfate as accessed February 27, 2023.

CLASS ACTION COMPLAINT
CASE NO.:

people pick up a 'glucosamine supplement,' but it's not the right kind of glucosamine and the results are sub-par. If you're looking for a supplement with glucosamine, we highly recommend getting a supplement with glucosamine sulfate potassium.")

## II.  PARTIES

### A.  Plaintiff

13. Plaintiff Robert B Shields ("Plaintiff") is a citizen of the state of California, residing in Los Angel, California. Plaintiff purchased a bottle of "Natures Measure" brand Glucosamine Sulfate 2KCl (Glucosamine Sulfate Potassium Chloride).

14. One of the many dietary supplement products that Dollar Tree, Inc. manufactured, marketed, and sold under its own brand is Natures Measure Glucosamine Sulfate 2KCl.

15. **Defendant is selling dietary supplements that are simply not what they claim to be.**

### B.  Defendant

16. Defendant Dollar Tree, Inc., is an American multi-price-point chain of discount variety stores. Headquartered in Chesapeake, Virginia, it is a Fortune 500 company and operates 15,115 stores throughout the 48 contiguous U.S. states and Canada. Defendant markets, and sells Natures Measure brand glucosamine supplements to consumers nationwide.

### III. STATEMENT OF JURISDICTION & VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), because (a) the aggregated claims of the putative members of each of the Classes exceed $5 million, exclusive of interest and costs; (b) there are at least 100 members in each Class; and (c) at least one of the members of each of the proposed Classes is a citizen of a different state than Defendant.

CLASS ACTION COMPLAINT
CASE NO.:

Defendant's Glucosamine Sulfate Products are available for sale nationwide such as Dollar Tree stores and certain online stores. The State of California accounts for approximately 12% of the national population. Accordingly, upon information and belief, there are class members who are citizens of states other than California, and such class members comprise more than two thirds of the proposed nationwide class.

18. This Court has personal jurisdiction over Defendant because Defendant, directly or through an agent, has transacted business and engaged in tortious and fraudulent conduct, by affirmative acts or omissions, in the State of California such that it reasonably anticipated being subject to personal jurisdiction before the courts of this State. Defendant and its agents have advertised, marketed, and/or sold Glucosamine Sulfate Products in California, including in this District. Defendant has sufficient minimum contacts with this State, and/or sufficiently availed itself to the markets of this State through its advertising, marketing, and sale within this State to render the exercise of jurisdiction by this Court permissible. Further, this Court has personal jurisdiction over Defendant because their Internet websites allow consumers to order and ship products anywhere in the United States, including this District. Defendant conducts business throughout the United States, including this District.

19. Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and Defendant has transacted substantial business within this District within the meaning of 28 U.S.C. § 1391, and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

CLASS ACTION COMPLAINT
CASE NO.:

20. Glucosamine is a popular dietary supplement that consumers generally take in order to preserve joint health or to help treat the symptoms of joint pain, osteoarthritis, and rheumatoid arthritis.

21. Glucosamine supplements are commercially available in the forms of Glucosamine Sulfate, Glucosamine Hydrochloride. Glucosamine Sulfate has demonstrated clinical effectiveness for certain conditions, while other forms of glucosamine have not. Indeed, the Mayo Clinic explicitly notes that "[t]hese supplements are not considered interchangeable."[5]

22. For glucosamine sulfate, it has two formulations: Glucosamine Sulfate **Potassium** Chloride and Glucosamine Sulfate **Sodium** Chloride.

23. Thus, the common perception of Glucosamine Sulfate is that it performs better than Glucosamine Hydrochloride or placebo treatments.

24. Accordingly, retailers such as Defendant promote Glucosamine Sulfate over Glucosamine Hydrochloride.

**The Dietary Supplement Industry Has Taken Advantage of the Lack of Regulation to the Detriment of Consumers**

25. Dietary supplements fall under the umbrella of food, not drugs.[6] Therefore, dietary supplements are not subject to the Federal laws or strict United States Food and Drug Administration (FDA) regulations that apply to drugs. While supplement manufacturers are subject to certain provisions of the Dietary. Supplement Health and Education Act of 1994 ("DSHEA"), dietary supplement firms are not required to prove to the FDA that their

---

[5] See https://www.mayoclinic.org/drugs-supplements-glucosamine/art-20362874 as accessed February 27, 2023.

[6] 21 U.S.C. § 321(ff)(1)(C). For purposes of the Federal Food, Drug, and Cosmetic Act, "a dietary supplement shall be deemed to be a food...." *Id*. § 321(ff).

CLASS ACTION COMPLAINT
CASE NO.:

products work or are safe before they sell them.[7] Rather, manufacturers of a "product … intended to supplement the diet that bears or contains [...] (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)"[8] and/or "means a product that is labeled as a dietary supplement" are generally left to self-police their compliance with DSHEA.

26. 21 U.S.C. § 343(s) provides that a food "shall be deemed to be misbranded" if it is a dietary supplement and fails to list "the name of each ingredient" in the dietary supplement, the "quantity of each such ingredient," or "the label or labeling of the supplement fails to identify any part of the plant from which the ingredient is derived," or, if the supplement is either covered by the specifications of an official compendium, is represented as conforming to the specifications of an official compendium, and fails to so conform, or, for supplements that aren't covered by an official compendium, if it "fails to have the identity and strength that the supplement is represented to have."

27. 21 U.S.C. § 342(g)(1) provides that a food shall be deemed to be adulterated "[i]f it is a dietary supplement and it has been prepared [or] packed … under conditions that do not meet current good manufacturing practice regulations…."

28. Current implementing regulations promulgated by the FDA under DSHEA require dietary supplement manufacturers, packagers, and labelers ("Manufacturer") to "implement a system of production and process controls that covers all stages of manufacturing,

---

[7] See http://articles.chicagotribune.com/2012-06-30/news/ct-met-supplement-inspections- 20120630_1_dietary-supplements-inspections-american-herbal-products-association/2 as accessed February 27, 2023.

[8] 21 U.S.C. § 321(ff). For purposes of the Federal Food, Drug, and Cosmetic Act, "a dietary supplement shall be deemed to be a food [...]" *Id*. § 321(ff).

- 8 -

CLASS ACTION COMPLAINT
CASE NO.:

packaging, labeling, and holding of the dietary supplement to ensure the quality of the dietary supplement...."

29. Manufacturers must establish "component specifications ... to ensure ... the purity, strength and composition of dietary supplements manufactured using the components...."

30. Manufacturers are required to test each component used in the manufacture of dietary supplements, including on each incoming shipment of components prior to their use in the manufacture of dietary supplements, and again on each finished batch.

**Defendant represents that the Affected Products are What they Purport to Be.**

31. Defendant's product is marketed as "Glucosamine Sulfate 2KCl 500 mg", in "Supplement Facts" (back label), that each tablet contains 500mg of Glucosamine Sulfate 2KCl (Glucosamine Sulfate Potassium Chloride). However, laboratory testing confirms that the product does not, in fact, contain any Glucosamine Sulfate Potassium Chloride; it also doesn't contain any Glucosamine Sulfate. Defendant products are only the blend of Glucosamine Hydrochloride and Potassium Sulfate.

32. Even on the front label of the package, it marked as one word "Glucosamine", but as above mentioned, as basic knowledge, "Glucosamine Sulfate is better than Glucosamine Hydrochloride", the consumers, the plaintiff, the Class and Subclass members must check the "Supplement Facts" (back label) to see what kind of glucosamine it is, **"Supplement Facts" is also a label, which is the detail label to explain to consumers**.

33. Certain Defendants' experts may misleading, the independent scientists would like to argue with them **in court, face to face, scientists to scientists, to see who is telling the truths.**

34. Defendant makes representations on the labels of each of the following dietary supplement products – Glucosamine Sulfate ("Affected Products") – regarding the ingredients in the

CLASS ACTION COMPLAINT
CASE NO.:

Affected Products. In no place does the label suggest that the product actually contains Glucosamine Hydrochloride and Potassium Sulfate

35. The Label as below:




36. The "Supplement Facts" for this product also list Ingredients as follows: "Glucosamine Sulfate Potassium Chloride, Microcrystaline Cellulose, magnesium stearate, silica, talc, etc.

37. Accordingly, a reasonable consumer would believe, as Plaintiffs did, that the label statements regarding the identity, quantity, and purity of the Affected Products would be truthful and not deceptive or misleading. As the ingredients listed on the label, specifically, it should contain 500 milligrams of "Glucosamine Sulfate Potassium Chloride", it means it contain corresponding amount of Glucosamine Sulfate.

**Plaintiffs and the Class and Subclass Would Not Have Purchased the Affected Products Had They Known the Truth.**

CLASS ACTION COMPLAINT
CASE NO.:

38. The lab test did not simply show that there was less Glucosamine Sulfate Potassium Chloride and less Glucosamine Sulfate than the label claimed—the test showed that there was no Glucosamine Sulfate Potassium Chloride; there was no Glucosamine Sulfate in the pills that were tested.

39. Defendant failed to disclose on its labels or otherwise that the Affected Products do not contain the ingredients represented on the Affected Products' labels or that the Affected Products contain adulterants or undisclosed substances.

40. The actual contents of the Affected Products are important to Plaintiff and members of the Class and Subclass. Defendant's failure to disclose that the Affected Products do not contain the ingredients as represented on the labels and that the Affected Products contain adulterants or undisclosed substances affected Plaintiff's and Class and Subclass members' purchasing decisions in that they would not have purchased the Affected Products had Defendant disclosed the true facts concerning their actual ingredients and composition.

41. Defendant recognizes or should have recognized the materiality and importance of the quality and safety of its products to its customers.

42. Plaintiffs and the Class and Subclass were misled and deceived by Defendant's material misrepresentations and/or omissions and were damaged and injured as a result of Defendant's conduct because:

a. They would not have purchased the Affected Products had they known that the Affected Products did not contain the ingredients as represented on the labels, and/or contained adulterants or undisclosed substances; and/or

CLASS ACTION COMPLAINT
CASE NO.:

    b.  They did not receive the benefit of the bargain and/or suffered out of pocket loss due to the misrepresentations and omissions in the Affected Products' labeling, as described above; and/or

    c.  The Affected Products were worthless and had no value due to Defendant's misrepresentations, omissions, untrue, misleading, unethical, unfair, and/or deceptive statements and mislabeling, as described above.

43. Plaintiff, the Class and Subclass would not have purchased the Affected Products had they known the truth.

## V.  PLAINTIFF'S EXPERIENCE WITH DEFENDANT'S PRODUCT

44. Defendant sells products that are represented to include Glucosamine Sulfate to the public in California and nationwide, through Dollar Tree and certain online stores.

45. Defendant's various Glucosamine Sulfate Products include those sold under Natures Measure brand.

46. Defendant's Glucosamine Sulfate products prominently display the words "Glucosamine Sulfate 2KCl" (Glucosamine Sulfate Potassium Chloride), as such, a reasonable person would believe that the product contains Glucosamine Sulfate in particular.

47. At various times in the past, the Class and Subclass members purchased Dollar Tree's Natures Measure-branded Glucosamine Sulfate. They did so in reliance on the accuracy of its label, and specifically Defendant's representation that it contained Glucosamine Sulfate.

48. Plaintiff suffered damage and detriment as a result of Defendant's misrepresentations.

49. As a result of the uncertainty regarding the contents of Glucosamine Sulfate Products, Plaintiff is, as yet, unwilling to purchase the products again. However, Plaintiff would

CLASS ACTION COMPLAINT
CASE NO.:

consider doing so if she were assured that the product label was truthful and the product bottle actually contained Glucosamine Sulfate, as represented.

50. Consumers cannot afford to have each and every purchase of Glucosamine Sulfate Products lab-tested. It is thus not practicable for all consumers of Defendant's Glucosamine Sulfate Products to determine the provenance of each bottle of the product, particularly the individual manufacturing lot that the bottle came from. Plaintiff, and others similarly situated, continue to be harmed, having no sustainable means of verifying the contents of the Glucosamine Sulfate Products.

### VI. CLASS ACTION ALLEGATIONS

51. Plaintiffs bring this action and seek to certify and maintain it as a class action under Fed. R. Civ. P. 23, individually and on behalf of the following Class:

All individuals and entities in the United States who purchased Natures Measure brand Glucosamine Sulfate products within the applicable statutes of limitations preceding the filing of this lawsuit. ("Nationwide Class").

52. Excluded from the Classes are: (a) Defendant and any entities in which Defendant have a controlling interest; (b) Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (c) All current employees of Defendant; (d) The Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case; (f) All governmental entities; (g) anyone who makes a timely election to be excluded from the Class.

53. Plaintiff similarly seeks to represent a Subclass defined as:

- 13 -

CLASS ACTION COMPLAINT
CASE NO.:

All individuals in California who purchased Natures Measure brand Glucosamine Sulfate products within the applicable statutes of limitations preceding the filing of this lawsuit. ("California Subclass").

54. Excluded from the Subclass are: (a) Defendant and any entities in which Defendant has a controlling interest; (b) Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (c) All current employees of Defendant; (d) The Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case; (f) All governmental entities; (g) anyone who makes a timely election to be excluded from the Class.

55. All Class allegations herein apply to the Class and Subclass equally.

56. Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Subclass and/or to add Subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

57. This case is properly brought as a class action under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), and all requirements therein are met for the reasons set forth herein.

58. The claims of all Class members derive directly from a single course of conduct by the Defendant. Defendant has and continues to engage in uniform and standardized conduct toward the Class members. Defendant does not differentiates, in degree of care or candor, in their actions or inactions, or the content of their statements or omissions, among individual Class members. Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other persons similarly situated pursuant under Fed. R. Civ.

CLASS ACTION COMPLAINT
CASE NO.:

P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

59. Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

60. **Numerosity - Fed. R. Civ. P. 23(a)(1).** The Class and Subclass are so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Moreover, glucosamine sulfate supplements are among the most common and popular supplements, and, thus, it is believed the Class includes many thousands of members. The numerosity requirement is, therefore, satisfied. Undoubtedly, individual joinder in this case is impracticable.

61. **Ascertainability**. The Class and Subclass are each ascertainable because its members can be readily identified using receipts, purchase records, business records, and other information kept by Defendant and/or third parties in the usual course of business and within their control or Plaintiff and the Class themselves. Plaintiff anticipates providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

62. **Commonality and Predominance - Fed. R. Civ. P. 23(a)(2) and (b)(3)**. There are several questions of law and fact common to the claims of Plaintiffs and the members of the Class and Subclass. All of the members of the Class' and Subclass' claims are based upon the same facts and circumstances, i.e., the marketing and sales practices of Defendant's products. Fed. R. Civ. P. 23(a)(3), The questions of law and fact common to the members of the Class and Subclass predominate over any questions affecting only individual members

CLASS ACTION COMPLAINT
CASE NO.:

of the Class and Subclass. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Class and Subclass. Common questions include, but are not limited to, the following:

a. Whether Defendants' Glucosamine Sulfate products contains Glucosamine Sulfate;

b. Whether Defendants' Glucosamine Sulfate products contains Glucosamine Sulfate Potassium Chloride;

c. Whether the Affected Products were sold in containers with packaging identifying them as **containing** a particular dietary supplement, i.e., Glucosamine Sulfate; Glucosamine Sulfate Potassium Chloride;

d. Whether, contrary to the product packaging, the Affected Products **did not contain** the dietary supplement identified on the packaging, i.e., Glucosamine Sulfate; Glucosamine Sulfate Potassium Chloride;

e. Whether Defendant's Products **contained** Glucosamine Hydrochloride and Potassium Sulfate;

f. Whether the Affected Products contained ingredients that **were not disclosed** on the packaging;

g. Whether Defendant manufactured and/or sold the **Affected Products**;

h. Whether a reasonable consumer would be **misled or deceived** by the Affected Products' packaging;

i. Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly **misrepresented the nature** of their products;

j. Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly **misrepresented the contents** of its products;

- 16 -

k. Whether Defendant unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly **induced Plaintiff** and the Members of the Class and Subclass into **purchasing** its products;

l. Whether Defendant engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by **inducing Plaintiff** and the Class and Subclass to purchase its product on terms that were **knowingly misleading and inaccurate**;

m. Whether Defendant's marketing, sales, and/or other **business practices are** unfair, deceptive, unlawful, fraudulent, unconscionable, and/or unethical;

n. Whether Defendant **breached** express or implied warranties;

o. Whether Defendant had a **duty to disclose** the actual contents of its products prior to sale;

p. Whether Defendant **violated** the applicable consumer protection statutes;

q. Whether Defendant **concealed material facts** in its advertising materials and agreement and/or failed to adequately disclose to Plaintiff material facts;

r. Whether Defendant has engaged in **deceptive acts or practices** in connection with the sales, marketing, and/or manufacturing of the its products;

s. Expressly disclaiming damages under the CLRA, whether Plaintiff and the Class and Subclass are entitled to **compensatory**, actual, and/or statutory **damages** as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent conduct;

t. Whether Defendant's conduct, as set forth herein, **damaged** members of the Class and, if so, the **measure** of those damages;

u. Whether Plaintiff and the Class and Subclass are entitled to injunctive, declaratory relief, or other equitable relief;

CLASS ACTION COMPLAINT
CASE NO.:

v. Whether Defendant's acts and practices in connection with the promotion and sale of products labeled as containing Glucosamine Sulfate violated the California UCL, CLRA, or FAL;

w. Whether the California UCL, CLRA, or FAL should apply to all respective Nationwide and/or California Class members; and

x. Whether Defendant was unjustly enriched as a result of Defendant's conduct.

63. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

64. **Typicality - Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of the Class and Subclass. The claims of the Plaintiffs and the respective Class and Subclass are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiffs and the respective Class and Subclass. Plaintiffs and all members of the Class and Subclass are similarly affected by Defendant's wrongful conduct and were damaged in the same way. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other Class and Subclass members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint. Plaintiffs, like other members of the Classes, purchased one or more Affected Products that did not contain the primary ingredients listed and the packaging and that such supplements were supposed to contain and/or contained ingredients that were not disclosed on the

- 18 -

packaging or label. Plaintiffs were subject to, and were financially harmed by, a common policy and practice applied by each Defendant to the respective Class members.

65. **Adequacy - Fed. R. Civ. P. 23(a)(4)**. Plaintiffs are adequate Class and Subclass representatives because Plaintiffs have retained counsel competent and experienced in complex class action litigation; neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclass; Plaintiffs are knowledgeable about the subject matter of this action and will assist counsel to vigorously prosecute this litigation and has or can acquire adequate financial resources to assure that the interests of the Class and Subclass will not be harmed. The interests of the members of Class and Subclass will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel. As such, Plaintiffs meets the adequacy requirement.

66. **Superiority - Fed. R. Civ. P. 23(b)(3)**. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if members of the Class and Subclass themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single

CLASS ACTION COMPLAINT
CASE NO.:

uniform adjudication, economy of scale, and comprehensive supervision by a single court. The prosecution of separate actions by the individual members of the Class and Subclass would create a risk of inconsistent or varying adjudication with respect to individual members of the Class. The prosecution of separate actions by individual members of the Class and Subclass would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Class and Subclass not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

67. **Policies Generally Applicable to the Class and Subclass. Fed. R. Civ. P. 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making final injunctive relief appropriate with respect to the Class and Subclass as a whole. Defendant's practices challenged herein apply to and affect the members of the Class and Subclass uniformly, and Plaintiffs' challenge of those practices hinge on Defendant's conduct with respect to the Class and Subclass as a whole, not on facts or law applicable only to Plaintiffs.

68. **Injunctive and Declaratory Relief is Appropriate - Fed. R. Civ. P. 23(b)(1)**. Defendant has acted, or refused to act on, grounds generally applicable to the Class and Subclass, thereby making appropriate final and injunctive relief with respect to the members of the Class and Subclass as a whole.

69. **Certification of Particular Issues**. **Fed. R. Civ. P. 23(c)(4)**. Issue certification is also appropriate with respect to any or all of the common issues identified herein.

CLASS ACTION COMPLAINT
CASE NO.:

70. **Notice to Class**: Plaintiff anticipates notice being effectuated using primarily direct electronic means, based upon customer identification and contact information contained in Defendant's business records and databases, to be supplemented with a targeted online notice campaign. Plaintiff will engage the services of a specialist with class action notice campaigns and reserves the right to supplement this intended approach as circumstances dictate, per their guidance.

## VII.    TOLLING OF STATUTE OF LIMITATIONS

71. Any applicable statute of limitations has been tolled by the Defendant's knowing and active concealment of its deceptive practices. Plaintiffs and members of the Class could not have reasonably discovered the true extent of the Defendant's deception with regard to the Affected Products, until very recently.

72. As a result of the active concealment by the Defendant, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIII.    CAUSES OF ACTION

### COUNT I

### BREACH OF WARRANTY UNDER THE MAGNUSON MOSS WARRANTY ACT

### (On Behalf of Plaintiff and the Class)

73. Plaintiff realleges and reincorporates by reference the allegations contained within the foregoing allegations of this Class Action Complaint as if fully set forth herein.

74. Defendant warranted in its labeling, selling, and/or supplying of Glucosamine Sulfate Products to retailers and/or consumers in California and nationwide that the products contain Glucosamine Sulfate.

CLASS ACTION COMPLAINT
CASE NO.:

75. Plaintiff and members of the Classes purchased Defendant's Glucosamine Sulfate Products based on this warranty.

76. Defendant's Glucosamine Sulfate Products do not, in fact, contain either Glucosamine Sulfate Potassium Chloride, or Glucosamine Sulfate.

77. The advertisements, models and samples, and other similar uniform representations disseminated by Defendant about its Glucosamine Sulfate products were, and are, affirmations of fact and/or promises with regard to the performance and quality of those products, including an affirmation that the product will be consistent with its core description. These advertisements, models and samples, and other similar representations, formed, in whole or in part, the basis of the bargain as between Defendant and members of the Class, and constituted express warranties that the products would conform thereto. As described above, Class members' products did not conform to these warranties, representations, models and samples.

78. Sears breached these express representations and implied warranties as described herein.

79. Defendant's conduct as described herein violates the Magnuson Moss Warranty Act ("Magnuson Moss Act"), 15 U.S.C. §§2304-2312.

80. Defendant breached the essential terms of its express warranties by charging Plaintiff and members of the Class without providing the product promised, as set forth herein.

81. Plaintiff and the other members of the Classes were injured and suffered damages as a direct and proximate result of Defendant's breach of warranty because: (1) they purchased Glucosamine Sulfate based on Defendant's misleading product label; and (2) the product did not have the composition, attributes, characteristics, or value that Defendant promised.

**COUNT II**

- 22 -

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

## (California Business & Professions Code §§ 17200, et seq.)

## (On Behalf of Plaintiff and the Class)

82. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

83. Plaintiff brings this claim on behalf of himself and the California Class.

84. Plaintiff asserts this claim for unlawful, unfair, and fraudulent business practices; and unfair, deceptive, untrue and misleading advertising.

85. Defendant's conduct is "unlawful" under the UCL because it violates the California Legal Remedies Act (as discussed below) and the Food, Drug, and Cosmetic Act ("FDCA") by misbranding products labeled as containing Glucosamine Sulfate.

86. Defendant's conduct is "unfair" under the UCL because it is immoral, unscrupulous, unethical, oppressive, and substantially injurious to California consumers of the Glucosamine Sulfate products by representing they contain Glucosamine Sulfate when actually do not contain any Glucosamine Sulfate.

87. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

88. Defendant's conduct is "fraudulent" because Plaintiff, the Class, and the public generally are likely to be deceived by Defendant's misbranding of its Glucosamine Sulfate products by representing that they contain Glucosamine Sulfate when they do not.

CLASS ACTION COMPLAINT
CASE NO.:

89. Defendant's continuing course of conduct establishes unfair, deceptive, untrue and misleading advertising by misbranding its Glucosamine Sulfate products as containing Glucosamine Sulfate when they do not.

90. Plaintiff was deceived into purchasing a product he otherwise would not have, causing him to suffer economic damages equal to the purchase price paid, or another amount to be proven at trial.

91. Plaintiff and the other members of the Class have been and continue to be injured as a direct and proximate result of Defendant's violations of the UCL.

92. Plaintiff is entitled to pursue a claim against Defendant on behalf of the Class pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17205 for restitution, disgorgement, and other equitable relief to remedy Defendant's unlawful and unfair practices, and to move under Cal. Code Civ. Proc. § 1021.5 for costs and attorneys' fees.

93. Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant is guilty of fraud and malice by intentionally misbranding its Glucosamine Sulfate and by intending to cause injury to the Plaintiff and the California Class.

94. Defendant's unlawful, unfair, and/or fraudulent business acts and practices, as described herein, were and are in violation of the UCL. Defendant's conduct violates the UCL in the following ways:

a.  By knowingly and intentionally concealing from Plaintiff and the other members of the Class material information concerning its product contents as set forth above;

b.  By violating the FTC;

c.  By breaching the terms of the Contract or other agreement;

CLASS ACTION COMPLAINT
CASE NO.:

d. By violating other California laws, including Cal. Bus. & Prof. Code § 17500, et seq., and Cal. Corp. Code § 25000, et seq. (described below); and/or

e. Violating other statutory law.

95. Defendant's omissions alleged herein caused Plaintiff and the other Class members to purchase the Glucosamine Sulfate products. Had they been aware of the information omitted by Defendant, Plaintiff and the other Class members would not have purchased Defendant's products or would have purchased them only at a reduced price.

96. Defendant's practice is also immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweigh its benefits.

97. Accordingly, Plaintiff and the Class members have suffered injury in fact, including lost money as a result of Defendant's unlawful, unfair, and fraudulent business acts and/or practices.

98. Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, under Cal. Bus. & Prof. Code § 17200.

99. Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

100. Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant is guilty of fraud and malice by intentionally misbranding its Glucosamine Sulfate products and by intending to cause injury to the Plaintiff and the California Class.

CLASS ACTION COMPLAINT
CASE NO.:

# COUNT III

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.

### (On Behalf of Plaintiff and the Class)

101. Plaintiff hereby restates and incorporates all paragraphs of Plaintiff's Class Action Complaint against Defendant as if fully set forth herein.

102. This cause of action is brought pursuant to Civil Code § 1750, et seq., the Consumers Legal Remedies Act ("CLRA"), on behalf of a Class as defined herein.

103. Defendant is a "person" within the meaning of Cal. Civ. Code sections 1761(c) and 1770.

104. Plaintiff and members of the proposed Class are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770.

105. Defendant's Glucosamine Sulfate products are "goods" or "services" as defined by Cal. Civ. Code § 1761(a).

106. Plaintiff's purchase was a "transaction" under § 1761(e).

107. As described above, Defendant violated the CLRA in at least the following respects:

a.  in violation of § 1770(a)(5), by representing that their "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have";

b.  in violation of § 1770(a)(6), by representing that Defendant's "goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

c.  in violation of § 1770(a)(9), by "advertising goods or services with intent not to sell them as advertised";

CLASS ACTION COMPLAINT
CASE NO.:

d.  in violation of § 1770(a)(16), by "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not";

e.  for other such violations of the CLRA that discovery will uncover.

108. Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and Defendant was wanton and malicious in its concealment of the same.

109. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions in the marketing and advertisement of the Glucosamine Sulfate.

110. Defendant's unfair or unlawful acts, practices, representations, omissions, and/or courses of conduct, as described herein, were undertaken by Defendant in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

111. As a direct and proximate result of Defendant's violations of law, Plaintiff and the Class have been injured.

112. Contemporaneous with the filing of this Complaint, Plaintiff will send Defendant a CLRA notification and demand letter via certified mail, return receipt requested.

113. The notice letter will set forth the relevant facts and notifies each Defendant of its CLRA violations, and request that each Defendant promptly remedy those violations.

114. Under the CLRA, a plaintiff may, without prior notification, file a complaint alleging violations of the CLRA that seeks injunctive relief only. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, the Plaintiff may amend his CLRA causes of action without leave of court to add claims for damages.

115. At this time, Plaintiff expressly disclaims any and all damages under CLRA. Plaintiff, individually and on behalf of the class, will amend this complaint to add damages claims if

CLASS ACTION COMPLAINT
CASE NO.:

Defendant do not remedy their violations as to Plaintiff and the Class Members within the statutory period.

116. Under the CLRA, Plaintiff are entitled to a permanent injunction prohibiting practices that violate the CLRA. Plaintiffs, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

117. Defendant's practices, acts and courses of conduct in connection with the sale of its Glucosamine Sulfate products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing in the future the unlawful, unfair, or fraudulent practice as described herein.

118. Plaintiff and the Class reasonably believed and/or depended on the materially false and/or misleading information provided by, or omitted by, Defendant with respect to Defendant's products.

119. By reason of the foregoing, Defendant's unlawful methods, acts, or practices as described herein have caused damage to Plaintiff and the Class Members, entitling them to injunctive relief.

120. Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff demands judgment against Defendant under the CLRA for injunctive and equitable relief only to enjoin the practices described herein.

121. Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

CLASS ACTION COMPLAINT
CASE NO.:

122. In bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal expenses in an amount to be proved at trial.

123. Plaintiff is also entitled to recover their attorneys' fees, costs, and expenses.

## COUNT IV

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

### (California Business & Professions Code §§ 17500, et seq.)

### (On Behalf of Plaintiff and the Class)

124. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

125. Cal. Bus. & Prof. Code § 17500 provides: It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise,. . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

126. Defendant caused to be made or disseminated throughout the United States, through advertising, marketing and other publications, statements, including statements included in its general advertising and on its website that omitted material information from consumers and members of the Class.

CLASS ACTION COMPLAINT
CASE NO.:

127. Defendant knew or should have known through the exercise of reasonable care that the omitted information was material to consumers, including Plaintiff and the other Class members.

128. Defendant has violated Cal. Bus. & Prof. Code § 17500 because their representations and omissions regarding the Glucosamine Sulfate products were material and likely to deceive a reasonable consumer.

129. Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. By purchasing the Glucosamine Sulfate products, Plaintiff and the other Class members relied on the representations by Defendant from which Defendant misrepresented and/or omitted material information as described herein. Had purchased the Glucosamine Sulfate products or would have paid less for them. Plaintiff and other Class members bestowed a benefit upon Defendant but did not receive the benefit of their bargain.

130. All of the wrongful conduct alleged herein occurred in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, in the state of California and elsewhere.

131. Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

CLASS ACTION COMPLAINT
CASE NO.:

132. Plaintiff also seeks punitive damages under Cal. Civ. Code § 3294 because Defendant is guilty of fraud and malice by intentionally misbranding Glucosamine Sulfate and by intending to cause injury to the Plaintiff and the Class.

**COUNT V**

**Unjust Enrichment and/or Restitution**

**(On Behalf of Plaintiff and the Nationwide Class,**

**and in the alternative, the California Class)**

133. Plaintiff and the other Class members been aware of the incorrect and/or omitted information, they would not have.

134. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

135. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class, and in the alternative, the California Class.

136. Plaintiff alleges that products that represent that they contain Glucosamine Sulfate that were and are sold and/or supplied by Defendant for retail sale to consumers do not contain Glucosamine Sulfate.

137. By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold dietary supplements that were mislabeled in a manner that was unfair, unconscionable, and oppressive.

138. Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes. Therefore, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Classes.

CLASS ACTION COMPLAINT
CASE NO.:

139. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

140. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

141. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of fees and rates on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds, under circumstances making it inequitable to do so, constitutes unjust enrichment.

142. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Classes. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by them.

143. A constructive trust should be imposed upon all wrongful or inequitable proceeds received by Defendant traceable to Plaintiff and members of the Classes.

144. Plaintiff and members of the Classes have no adequate remedy at law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and the Class and Subclass pray for judgment as follow:

A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23, appoint Plaintiff and Plaintiff's counsel to represent the proposed Class and Subclass, appointing counsel for Plaintiff as lead counsel for the Class and Subclass;

CLASS ACTION COMPLAINT
CASE NO.:

B. An order awarding declaratory relief and temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and/or unfair business practices alleged in this Complaint;

C. Appropriate injunctive relief;

D. Expressly disclaiming any and all damages under Civil Code § 1750, et seq., "the CLRA", for an order awarding restitution, disgorgement, actual damages, statutory damages, exemplary damages, treble damages, and punitive damages under applicable law, compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

E. A declaration that Defendant is financially responsible for all Class and Subclass notice and the administration of Class and Subclass relief;

F. An order awarding any applicable statutory and civil penalties;

G. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H. An award of costs, expenses, and attorneys' fees as permitted by law; and

I. Such other or further relief as the Court may deem appropriate, just, and proper under the circumstances.

CLASS ACTION COMPLAINT
CASE NO.:

## X. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.


**DATED: <u>May 18, 2023</u>**                    Respectfully submitted,

<u>By: /S/ Jingxin Li</u>
Jingxin Li, Esq.
LAW OFFICE OF JASON LI, P.C.
820 S Garfield Ave, Ste 102,
Alhambra, CA 91801-5838
T: (626) 537-1403
F: (626) 414-5627
E: jasonli@jasonlilaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE PROPOSED CLASS**

- 34 -

CLASS ACTION COMPLAINT
CASE NO.: